# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

THOMAS JAMES CAVENDER,

Defendant-Appellant.

UNPUBLISHED
July 10, 2018

No. 336610
St. Clair Circuit Court
LC No. 16-001668-FH

Before: BORRELLO, P.J., and SHAPIRO and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of one count of possession of less than 25 grams of a controlled substance, MCL 333.7403(2)(a)(*v*). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 12 months in jail. We affirm.

On July 1, 2015, police executed a search warrant at defendant's house, located at 1319 South River Pointe Lane in the city of St. Clair. The search was part of a multi-jurisdictional investigation into a drug trafficking organization that was alleged to be operating in the tri-county area. A black cell phone and $3,000 in currency (three bundles of $1,000) were found in defendant's kitchen. The police also searched defendant's car, a black Chrysler 200, parked at the end of the driveway of the residence. The police recovered from the center console of defendant's car a clear plastic baggy containing a white powdery substance, two medication bottles, and another cell phone. The baggy was later determined to contain 0.61 grams of cocaine. The cell phones were found to contain messages using "street terminology" that indicated involvement in drug trafficking.

Defendant was charged with one count of possession of less than 25 grams of cocaine, second or subsequent offense, MCL 333.7403(2)(a)(*v*); MCL 333.7413(2). He filed a motion to suppress evidence seized from his home on the bases that the allegations in the affidavit did not support a finding of probable cause to search his house and that the allegations in the affidavit were stale, among other arguments. The trial court denied the motion, ruling that the allegations in the affidavit, which connected defendant to the suspected head of an ongoing drug trafficking organization and set forth facts demonstrating that officers had observed defendant engaging in conduct consistent with or indicative of drug trafficking, were sufficient to support a finding of probable cause. The court further concluded that the allegations were not stale given the ongoing nature of the drug-trafficking operation at issue.

-1-

A jury found defendant guilty, as charged, of one count of possession of less than 25 grams of cocaine. The prosecutor opted to dismiss the second or subsequent offense portion of the possession charge, MCL 333.7413(2), in favor of defendant being sentenced as a fourth-offense habitual offender, MCL 769.12. Thereafter, defendant was sentenced, as a fourth-offense habitual offender, to one year in jail. Defendant's appeal as of right followed.

Defendant first contends that the trial court erred by denying his motion to suppress the evidence seized from his residence. Defendant claims that the allegations in the search warrant affidavit were insufficient to support a finding of probable cause to search his residence. We disagree.

This Court reviews de novo a trial court's ultimate decision on a motion to suppress evidence. *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008). A trial court's determination regarding the sufficiency of allegations in a search warrant is reviewed to determine "whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause. To find a substantial basis, we must ensure that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 21-22 (quotation marks and citations omitted).

Based on our review of the allegations in the affidavit, we conclude that there was a substantial basis for a finding of probable cause. The affidavit by Detective Brian Burwell, a narcotics officer with fourteen years of experience and extensive training, noted that defendant had a prior felony drug conviction and that defendant frequented a building on Nine Mile Road connected to Anthony Garrisi, the suspected head of a drug trafficking organization. On one occasion, an officer observed defendant meet with Garrisi at the Nine Mile Road location before travelling to two homes, where he stayed for short periods of time before returning to the Nine Mile Road building. On another occasion, an officer observed defendant drive from the Nine Mile Road location to a business in Clinton Township, where defendant never entered the business but instead briefly met with an individual who approached his car in the alley. As detailed in the affidavit,

> A short period of time later, a subject exits Alley 59 and approaches the passenger side of Cavender's vehicle. That subject then walks away from Cavender's vehicle and towards other parked vehicles in the parking lot. The subject then returns to the driver's side of Cavender's vehicle and after a brief meeting[,] Cavender then pulls away and exits the parking lot. Affiant identified this type of behavior, through training and experience, as indicative to narcotic trafficking.

In addition, when defendant drove away from the business, he drove using a "cleaning" technique, known to be used by drug traffickers.[1] After detailing his extensive training and

---

[1] The affiant defined "cleaning" as "a general term used when suspects use indirect routes, varying speeds, stopping and observing traffic in the area and actively trying to pick out law enforcement surveillance crews utilizing these and other counter surveillance techniques."

experience with respect to drug trafficking investigations, the affiant concluded that defendant's behaviors were consistent with drug trafficking.

Where defendant's behavior were observed by the police and an experienced and trained officer believed that defendant's behavior was in some instances "indicative to narcotic trafficking," and in other instances "is synonymous with that of narcotic traffickers," we cannot conclude that the search lacked an adequate basis. The affidavit also stated that, based on the affiant's experience and training, individuals involved in illegally trafficking controlled substances often store drugs and associated items, such as ledgers and other records regarding their illegal activities, in their homes. Because the allegations thus were sufficient to cause a person of reasonable caution to be justified in concluding that defendant was involved in drug trafficking and that evidence of his criminal conduct would be found in his home, we find no error in the trial court's conclusion that the allegations were sufficient to demonstrate probable cause for the search.

Defendant next argues that the allegations were insufficient to establish probable cause to search his home because there were no allegations that any criminal activity was taking place at defendant's home. "[I]n order for probable cause to exist to search a particular place, a sufficient nexus must be shown between the place to be searched and the suspected evidence of criminal activity." *People v Nunez*, 242 Mich App 610, 620; 619 NW2d 550 (2000). While defendant correctly argues that the affidavit did not contain allegations of criminal conduct occurring at defendant's home, as we have noted, the affiant alleged, based on his education, training, and experience, that individuals involved in drug trafficking often keep drugs, records of their transactions, and other evidence at their residences. Detective Burwell's allegation establishes the required nexus between defendant's home and the suspected evidence of criminal activity.

Defendant next argues that the allegations were insufficient to support a finding of probable cause because there was no indication in the affidavit that the anonymous confidential informant who supplied information to the affiant had seen defendant possess or traffic drugs at his home. Again, while there was no allegation in the affidavit that drugs had been seen at defendant's home, Detective Burwell alleged that, based on his education, training, and experience, individuals involved in drug trafficking often keep contraband and records of their transactions and other evidence at their residences. Thus, the police sought to search defendant's home not on the basis of information from an anonymous confidential informant, but on the basis of Detective Burwell's allegation that evidence of drug trafficking likely would be found there. Given the facts set forth in the affidavit, those allegations were sufficient to establish probable cause.

Defendant next argues that the allegations were insufficient to establish probable cause where the information in the search warrant was stale. Specifically, defendant argues that the information was stale because the last surveillance of defendant was on May 15, 2016, and the affidavit was signed on June 30, 2016.

"[I]t cannot be assumed that evidence of a crime will remain indefinitely in a given place." *People v Russo*, 439 Mich 584, 605; 487 NW2d 698 (1992). Thus, staleness is a factor to consider when determining whether there was probable cause for a search. *Id*. However, the

age of information, alone, is not determinative of whether information is stale. *People v Stumpf*, 196 Mich App 218, 226; 492 NW2d 795 (1992).

> Time as a factor in the determination of probable cause to search is to be weighed and balanced in light of other variables in the equation, such as whether the crime is a single instance or an ongoing pattern of protracted violations, whether the inherent nature of a scheme suggests that it is probably continuing, and the nature of the property sought, that is, whether it is likely to be promptly disposed of or retained by the person committing the offense. [*Russo*, 439 Mich at 605-606.]

Here, the search warrant sought items including records, receipts, ledgers, customer lists, computer disks, proofs of residency, correspondence, weapons, telephones, and photographs. The affiant indicated that, based on his training and experience, drug traffickers often maintain such items in their residences. The affiant further stated that it is likely that an individual would retain these types of items rather than promptly dispose of them, a conclusion which, at least as to the personal items such as proof of residency, correspondence, and photographs, certainly is true. See *United States v McManus*, 719 F2d 1395, 1401 (6 CA, 1983) ("[T]hese items (passports, identification papers and bank records) are the sort which would normally be kept at one's personal residence. They are also the sort *which could be reasonably expected to be kept there for long periods of time.*") (citation and some emphasis omitted).[2] In addition, the affidavit set forth that the search warrant was part of an investigation into an ongoing drug trafficking organization, rather than a one-time drug deal. When, as here, "an affidavit recites activity indicating protracted or continuous conduct, time is of less significance" to the staleness inquiry. *United States v Henson*, 848 F2d 1374, 1382 (6 CA, 1988). Given the type of items sought and the ongoing nature of the drug trafficking operation being investigated, defendant has not shown that the trial court erred by concluding that the information in the affidavit was not stale.

Moreover, assuming the warrant was technically deficient, we would be compelled to affirm under the principles enunciated in *People v Goldston*, 470 Mich 523; 682 NW2d 479 (2004). Under *Goldston*, reliance on a warrant is reasonable, such that suppression is not an available remedy, even if the warrant is later invalidated for lack of probable cause, except in three circumstances: (1) if the issuing magistrate or judge is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing judge or magistrate wholly abandons his judicial role; or (3) where an officer relies on a "bare bones" affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Id*. at 531, citing *United States v Leon*, 468 US 897, 915, 923; 104 S Ct 3405; 82 L Ed 2d 677 (1984); *Goldston*, 470 Mich at 531.

Defendant argues that the third prong is implicated—that is, the affidavit was so lacking in indicia of probable cause that it was unreasonable for the searching officers to rely on it.

---

[2] Although not binding on us, the decisions of lower federal courts are persuasive authority. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

However, for the reasons stated previously, even if we were to find that the affidavit failed to establish probable cause, it nevertheless was not so "bare bones" in its details that official belief in its validity would have been unreasonable. As such, there is no basis for suppressing the fruits of the search.

Finally, defendant contends that he was denied the effective assistance of counsel because defense counsel failed to file an interlocutory appeal from the trial court's order denying his motion to suppress. We disagree.

Because he did not move for a new trial or an evidentiary hearing on the ground that he was denied the effective assistance of counsel, defendant has failed to preserve this issue for review. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002). Therefore, this Court's review is limited to mistakes apparent from the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

To demonstrate that defense counsel was ineffective for failing to file an interlocutory appeal from the trial court's denial of defendant's motion to suppress, defendant must show (1) that defense counsel's failure to file an interlocutory appeal fell below an objective standard of reasonableness, and (2) that, but for defense counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. See *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

In light of our conclusion in *this* appeal that the trial court did not err by denying defendant's motion to suppress, defendant has not shown that an interlocutory appeal would have yielded any different results, as the analysis in that interlocutory appeal would have been the same as provided in this appeal. Defense counsel was not ineffective for failing to file an appeal from a meritless position. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 50 (2000). Consequently, as a matter of law, defendant cannot establish any prejudice from defense counsel's decision not to file an interlocutory appeal, and his claim of ineffective assistance of counsel necessarily fails.

Affirmed.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Jonathan Tukel